IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ERNEST OGUGUA, | ) | CASE NO. 8:07CV471 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| THE ARCHDIOCESE OF OMAHA, | ) | |
| ELDEN F. CURTISS, and | ) | |
| DANIEL KAMPSCHNEIDER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss (Filing No. 10) and Motion for Sanctions (Filing No. 12), both submitted by Defendants Archdiocese of Omaha ("Archdiocese"), Elden F. Curtiss ("Curtiss"), and Daniel Kampschneider ("Kampschneider"). For the reasons stated below, the Motion to Dismiss will be granted in part and denied in part, and the Motion for Sanctions will be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff, Ernest Ogugua ("Ogugua"), filed this action against the Defendants under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and asked the Court to take supplemental jurisdiction over his common law defamation claims against the Defendants. (Amended Complaint, Filing No. 5).

Ogugua alleges that on June 16, 2005, the Archdiocese assigned him to work as an Assistant Pastor at the Saint Vincent De Paul Church ("SVDP") in Omaha, Nebraska, where Kampschneider served as Pastor. (*Id.* ¶ 12). Ogugua and Kampschneider both resided in the church's rectory. (*Id.*). Ogugua alleges that on numerous occasions Kampschneider came into Ogugua's bedroom unannounced and stared at him while he

was dressing or bathing. (*Id.*, ¶ 13). In March 2006, Ogugua allegedly met with Curtiss, Archbishop of the Archdiocese, to express concerns about Kampschneider's conduct, and Curtiss allegedly responded, "If Father Kampschneider wants to look at you naked let him." (*Id.*, ¶ 15).

Ogugua contends that Kampschneider retaliated against him by making false accusations regarding Ogugua's conduct and unfounded criticisms of his work performance (id., ¶¶ 16-17), and that as a result of Kampschneider's allegations, Curtiss reassigned Ogugua to another church. (*Id.*, ¶¶ 18-19). On December 22, 2006, Curtiss allegedly sent an e-mail to the parishioners of SVDP stating that Ogugua was reassigned to another church due to "serious concerns brought to his attention in meetings with Father Kampschneider and Father Bart throughout the past year." (*Id.*, ¶ 20). When Ogugua requested a meeting with Curtiss, an investigation of Kampschneider's allegations, and a copy of Kampschneider's report, Curtiss allegedly responded, "If you take this to court, I will destroy you in America, go back to Africa." (*Id.*, ¶ 21).

On February 26, 2007, Ogugua allegedly wrote to Curtiss, requesting leave to serve in another diocese. (*Id.*, ¶ 22). Curtiss granted Agugua a one-year leave, but, when Ogugua requested a certificate of good standing to allow him to accept pastoral duties in New York, Curtiss allegedly failed to provide the certificate, causing Ogugua loss of income. (*Id.*, ¶¶ 23-27).

Ogugua filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was dismissed on September 11, 2007. (*Id.*,

attachment).  He filed this action on December 10, 2007, and the Defendants have moved to dismiss the action and for monetary sanctions against him and his lawyer.

## STANDARD OF REVIEW

The Defendants have moved to dismiss Ogugua's action under both Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim on which relief can be granted.

The party asserting subject matter jurisdiction, here Ogugua, has the burden of proving that jurisdiction is proper.  *VS Ltd. P'ship v. Dep't of Hous. and Urban Dev.,* 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted).  Although dismissal will not be granted lightly, *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996), "[t]he district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under [Rule] 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993).

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the factual allegations in the Complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . " *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that

3

recovery is very remote and unlikely.'" *Id.*, quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## DISCUSSION

First, the Defendants contend that this Court lacks subject matter jurisdiction to entertain Ogugua's claims under Title VII, because personnel decisions affecting clergy cannot be reviewed by civil courts without violating the Free Exercise Clause of the First Amendment to the United States Constitution. Second, they contend that Ogugua's Title VII claims against Curtiss and Kampschneider are not claims on which relief can be granted, because only employers and not supervisors are proper defendants under Title VII. Third, they contend that this Court lacks jurisdiction over Ogugua's defamation claim, again because the First Amendment shields the Defendants from the Court's intervention into such ecclesiastical matters. Finally, they seek monetary sanctions against Ogugua and his lawyer under Fed. R. Civ. P. 11(c).

*Does this Court have subject matter jurisdiction under Title VII to review personnel actions affecting clergy?*

The Defendants rely upon a single case for the proposition that this Court lacks subject matter jurisdiction over Ogugua's claims under Title VII. In *Scharon v. St. Luke's Episcopal Presbyterian Hospitals,* 929 F.2d 360, 363 (8th Cir. 1991), the plaintiff, an ordained Episcopal priest, was fired after the defendant alleged that she violated several canonical laws. The Eighth Circuit Court said:

> Personnel decisions by church-affiliated institutions affecting clergy are *per se* religious matters and cannot be reviewed by civil courts, for to review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of

4

> whether, in the context of the particular case, religious doctrine and canonical law support the decision the church authorities have made. This is precisely the kind of judicial second-guessing of decision-making by religious organizations that the Free Exercise Clause forbids.

*Id.* at 363.

The Eighth Circuit Court also said: "We have confidence that courts will continue to consider these situations on a case-by-case basis, looking in each case to see whether the plaintiff's employment discrimination claim can be adjudicated without entangling the court in matters of religion." *Id.* at n.3.

This Court has a responsibility, therefore, to consider Ogugua's claim to determine whether it can be adjudicated without entangling the Court in matters of religion. Following the guidance of the Eighth Circuit's decision in *Scharon,* the analysis begins with the three-part approach developed by the Supreme Court in *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). First, it must be determined whether the application of Title VII to the present case "would give rise to serious constitutional questions." *Id.* at 361, quoting *Catholic Bishop*, 440 U.S. at 501. As in *Scharon*, the claims asserted by Ogugua raise such questions. Second, it must be determined whether Title VII applies to the present case, because "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." *Id.*, quoting *Catholic Bishop*, 440 U.S. at 500. As in *Scharon*, it is clear that Title VII applies to the employment relationship here. *Id.* at n.2, citing *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1167 (4th cir. 1985), cert. denied, 478 U.S. 1020 (1986). Third, it must be determined whether Title VII constitutionally can be applied to the facts of this case. To answer the third question, the three-part test set out in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), is

applied. "For a statute to withstand scrutiny under the Establishment Clause of the First Amendment, it first 'must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . [and third] the statute must not foster 'an excessive government entanglement with religion.'" *Id.* at 362, quoting *Lemon*, 403 U.S. at 612-13. It is clear that Title VII has "a secular purpose" and does not have "the principal or primary effect of advancing or inhibiting religion." *Id.*, citing *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,* 483 U.S. 327, 335-39 (1987), and *Rayburn*, 772 F.2d at 1170 n. 6 ("There is no question that Title VII meets the first two of these tests."). Thus, as in *Scharon*, this Court's jurisdiction over Ogugua's claims turns on whether the application of Title VII to the facts alleged in the Amended Complaint requires "excessive government entanglement with religion." *Id.*

From the facts alleged in the Amended Complaint, it is apparent that the Archdiocese of Omaha is a religious institution and that Ogugua was a clergyman performing ministerial duties of a religious and spiritual nature. However, accepting Ogugua's allegations as true, he suffered adverse employment actions due to his race, his national origin, his refusal to submit to sexual harassment by a supervisor, and his complaints of such unlawful treatment. Ogugua's case can be distinguished from *Scharon* in two important respects. First, according to the defendants in *Scharon*, the plaintiff was fired because her pastoral supervisor believed that she violated several canonical laws. For a court to review such a decision would require it to "determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context

6

of the particular case religious doctrine and canonical law support the decision the church authorities have made." *Id.* at 363.  Second, the district court in *Scharon* dismissed the plaintiff's action on a motion for summary judgment, which permitted the court to consider the defendants' stated reasons for the plaintiff's termination and to review affidavits and other evidence.  Here, the Defendants have not yet filed an answer, let alone a motion for summary judgment with an index of evidence.

At this stage of the proceedings, Ogugua has met his burden of demonstrating that jurisdiction is proper.  The Defendants' response to Ogugua's allegations will be needed in order for this Court to fulfill the mandate of the Eighth Circuit "to see whether the plaintiff's employment discrimination claim can be adjudicated without entangling the court in matters of religion."  *Id.* at 363, n.3.

*May Title VII claims be brought against supervisors, who are not the plaintiff's employer?*

Ogugua does not contest the Defendants' motion to dismiss Ogugua's Title VII claims against Curtiss and Kampschneider.  Neither Curtiss nor Kampschneider was Ogugua's employer at any time relevant to this action, and neither may be liable to Ogugua under 42 U.S.C. § 2000e-2.  "Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII."  *Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377, 381 (8th Cir. 1995).  Accordingly, the Defendants' motion to dismiss Ogugua's Title VII claims against Curtiss and Kampschneider will be granted.

*Does this Court have subject matter jurisdiction over a clergyman's defamation claim against his employer and religious supervisors?*

As with Ogugua's Title VII claim, his defamation claim gives rise to First Amendment concerns. The Defendants rely on three cases for the proposition that this Court lacks subject matter jurisdiction over Ogugua's defamation claim: *Downs v. Roman Catholic Archbishop of Baltimore,* 683 A2d 808, 811-14 (Md. App. 1996); *Yaggie v. Indiana-Kentucky Synod Evangelical Church in America,* 860 F. Supp. 1194, 1197-99 (W.D. Ky. 1994); and *Hutchinson v. Thomas*, 789 F.2d 392, 393 (6th Cir. 1986). As Ogugua notes, however, all three cases involved defamation claims based on the defendants' statements questioning the plaintiffs' fitness to serve as members of the clergy. The courts concluded that judicial inquiry into the selection or retention process for clergy would be impermissible under the First Amendment.

Ogugua refers this Court to the analysis in *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468 (8th Cir. 1993), in which the Eighth Circuit Court concluded that the First Amendment did not bar a minister's claim of defamation based on his allegation that the Synod circulated a file containing false information about his spouse, *i.e.*, that the spouse had a prior marriage, affecting the plaintiff's ability to obtain employment as a pastor. The Eighth Circuit Court said:

> The First Amendment proscribes intervention by secular courts into many employment decisions made by religious organizations based on religious doctrine or beliefs. Personnel decisions are protected from civil court interference where review by civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law. . . . The First Amendment does not shield employment decisions made by religious organizations from civil court review, however, where the employment decisions do not implicate religious beliefs, procedures, or law.
> . . . .
> At the present stage of this litigation we are unable to predict that the evidence offered at trial will definitely involve the district court in an impermissible inquiry into the Synod's bylaws or religious beliefs. . . . The Synod has not offered any religious explanation for its actions which might entangle the court in a religious controversy in violation of the First

>Amendment. Drevlow is entitled to an opportunity to prove his secular allegations at trial.
>
>. . . .
>
>[T]he district court must exercise care to ensure that the evidence presented at trial is of a secular nature. . . . It is incumbent upon the court to limit the evidence at trial in order to avoid determining religious controversies. If further proceedings reveal that this matter cannot be resolved without interpreting religious procedures or beliefs, the district court should reconsider the Synod's motion to dismiss.

Liberally construing Ogugua's defamation claim, he alleges that Kampschneider subjected him to sexual harassment, that Ogugua complained about the harassment, that Kampschneider retaliated against Ogugua by making false accusations against him,[1] and that Curtiss published an e-mail to the parishioners of SVDP stating that Ogugua was reassigned to a new parish due to "serious concerns brought to his attention in meetings with Father Kampschneider and Father Bart throughout the past year." Nothing in Curtiss's e-mail indicates that the "serious concerns" were of an ecclesiastical nature.[2]

---

[1] Although some of Kampschneider's allegedly false accusations concerned Ogugua's ministerial duties, at least one accusation was of a secular nature, *e.g.*, the allegedly false accusation that Ogugua failed to sleep in the rectory.

[2] The Defendants have not questioned, at this stage of the proceedings, whether the factual allegations in Ogugua's Amended Complaint satisfy the elements of a defamation claim under Nebraska law, and the Court does not address that matter at this time. Neither has the Archdiocese questioned, at this stage of the proceedings, whether the factual allegations in Ogugua's Amended Complaint demonstrate that Curtiss and Kampschneider were acting in the scope and course of their employment when making the allegedly defamatory remarks. Although Curtiss and Kampschneider have not suggested that this Court lacks supplemental jurisdiction over the defamation claims against them if the Title VII claims against them are dismissed, it is noted that Ogugua's defamation claims against Curtiss and Kampschneider do arise from a common nucleus of operative fact and form part of the same case or controversy as Ogugua's Title VII claim against the Archdiocese. The Court, therefore, finds no reason to decline to exercise supplemental jurisdiction over those claims at this time. See 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 937 (8th Cir. 1999); *McLaurin v. Prater*, 30 F.3d 982, 984 (8th Cir. 1994).

9

As in *Drevlow*, Ogugua is entitled to an opportunity to prove his secular allegations. If further proceedings reveal that this matter cannot be resolved without interpreting religious procedures or beliefs, this Court will entertain the appropriate motion at such time.

<u>*Are sanctions warranted against Ogugua or his attorney under Rule 11(c)?*</u>

The Defendants argue that Ogugua's claims were filed for the improper purpose of harassment, and are not warranted by existing law or by any nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Accordingly, the Defendants argue that this Court should impose sanctions against Ogugua and his attorney under Fed. R. Civ. P. 11(c) for violation of the mandate in Fed. R. Civ. P. 11(b).

Ogugua's response to the Defendants' Motion to Dismiss (Filing No. 16), his response to the Defendants' Motion for Sanctions (Filing No. 19), and his affidavit (Filing No. 18), demonstrate that the allegations in the Amended Complaint are based on admissible evidence and, at a minimum, that the claims for relief are warranted by nonfrivolous arguments for the extension, modification, or reversal of existing law.

## CONCLUSION

Ogugua's Title VII claims against Curtiss and Kampschneider will be dismissed. The Defendants' Motion to Dismiss is otherwise denied, as is the Defendants' Motion for Sanctions.

IT IS ORDERED:

1. The Motion to Dismiss (Filing No. 10) submitted by Defendants Archdiocese of Omaha, Elden Curtiss, and Daniel Kampschneider, is granted in part and denied in part, as follows:

  a. Ogugua's Title VII claims against Defendants Elden Curtiss and Daniel Kampschneider are dismissed with prejudice;

  b. The Motion to Dismiss is otherwise denied;

2. The Motion for Sanctions (Filing No. 12) submitted by Defendants Archdiocese of Omaha, Elden Curtiss, and Daniel Kampschneider, is denied; and

3. Defendant Archdiocese of Omaha will respond to Ogugua's Title VII claims and Defendants Archdiocese of Omaha, Elden Curtiss and Daniel Kampschneider will respond to Ogugua's defamation claim on or before April 4, 2008.

DATED this 24th day of March, 2008.

           BY THE COURT:

           s/Laurie Smith Camp
           United States District Judge