# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ERNEST OGUGUA, | ) CASE NO. 8:07CV471 |
| Plaintiff, | ) |
| v. | ) MEMORANDUM |
| | ) AND ORDER |
| THE ARCHDIOCESE OF OMAHA, ELDEN F. CURTISS, DANIEL KAMPSCHNEIDER, and SAINT VINCENT DE PAUL, | ) |
| Defendants. | ) |

Before the Court is the Defendants' Motion for Summary Judgment (Filing No. 52). For the reasons stated below, the Motion will be granted with respect to the Plaintiff's claims against Defendants Archdiocese of Omaha ("Archdiocese") and Saint Vincent de Paul, an Omaha Catholic parish church ("SVdP"); the Court will decline to exercise supplemental jurisdiction over the remaining claims against Defendants Elden F. Curtiss ("Curtiss") and Daniel Kampschneider ("Kampschneider"); and the Defendants' Motion for Oral Argument (Filing No. 55) will be denied as moot.

## OGUGUA'S ALLEGATIONS

The Plaintiff, Ernest Ogugua ("Ogugua"), brought this action against the Archdiocese[1] and SVdP[2] under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and asked the Court to take supplemental jurisdiction over his common law defamation claims against Curtiss and

---

[1]The corporate name of the Archdiocese is "The Catholic Archbishop of Omaha." Affidavit of Daniel J. Kampschneider ("Kampschneider Aff."), Filing No. 53-4, ¶ 5.

[2]The corporate name of SVdP is St. Vincent Church of Omaha. Kampschneider Aff. ¶ 3.

Kampschneider.  (Filing No. 46, hereafter "Second Amended Complaint").  Following is a summary of Ogugua's *allegations*:

In June 2005, the Archdiocese assigned Ogugua to work as an assistant pastor at SVdP, where Kampschneider served as pastor.  Kampschneider repeatedly entered Ogugua's rectory quarters unannounced and stared at him while he was dressing or bathing.  (*Id.* at ¶¶ 16-18).  In March 2006, Ogugua met with Curtiss, the Archbishop of the Archdiocese, to express concern about Kampschneider's conduct, and Curtiss responded:  "If Father Kampschneider wants to look at your naked let him."  (*Id.* at ¶19).

Kampschneider retaliated against Ogugua by making false accusations and unfounded criticisms of his work performance (*Id.* at ¶ 20), and, as a result of those allegations, Curtiss reassigned Ogugua to another church.  (*Id.* at ¶¶ 22-23).  On December 22, 2006, Curtiss sent an e-mail to the parishioners of SVdP stating that Ogugua's reassignment was due to "serious concerns."  (*Id.* at ¶ 24).  When Ogugua requested a meeting with Curtiss, an investigation of Kampschneider's allegations, and a copy of Kampschneider's report, Curtiss responded, "If you take this to court, I will destroy you in America, go back to Africa."  (*Id.* at ¶ 25).

On February 26, 2007, Ogugua wrote to Curtiss, requesting leave to serve in another diocese.  (*Id.* at ¶ 26).  Curtiss granted Ogugua a one-year leave, but, when Ogugua requested a certificate of good standing to allow him to accept pastoral duties in New York, Curtiss failed to provide the certificate, causing Ogugua financial loss.  (*Id.* at ¶¶ 27-31).

Ogugua filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against the Archdiocese, and the charge was dismissed on September 11, 2007.[3]  He filed this action on December 10, 2007.

---

[3] The EEOC "right-to-sue" letter is attached to Ogugua's Complaint (Filing No. 1) and Amended Complaint (Filing No. 5), although it is not attached to the Second Amended Complaint (Filing No. 46).

## FACTS

The briefs submitted by the parties demonstrate that the following material facts are not in dispute.[4]

Each parish located within the Archdiocese is a separate, non-profit corporation organized under Nebraska law, and Ogugua understood that each parish, including SVdP, was a separate corporation. Curtiss, as Archbishop, assigned priests to the office of pastor for each parish within the Archdiocese for a period of six years, and assigned associate and assistant pastors to assist in pastoral ministry, generally for a period of three years. Curtiss determined canonical appointments, assignments, and leaves of absence. All priests assigned to churches within the Archdiocese were subject to the Archdiocese's policies and the norms of the 1983 Code of Canon Law of the Roman Catholic Church.

In June 2005, Curtiss assigned Ogugua to serve as the assistant pastor at SVdP, and conflicts began to arise between Ogugua and SVdP's pastor, Kampschneider. In the

---

[4] NECivR 56.1 requires that the party moving for summary judgment set forth in the brief in support of the motion a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law; furthermore, each statement of fact must contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony, or other materials relied upon to support the material facts recited in each numbered paragraph. The Defendants have complied with this rule. (Filing No. 54, pp. 2-16). In response, the party opposing the motion must address each numbered paragraph and in the case of any disagreement, include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony, or other materials upon which the opposing party relies. "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1(b)(1). Ogugua's response to the Defendants' statement of undisputed material facts reveals no genuine issue as to any fact material to the disposition of this case. (Filing No. 60, pp. 2-7). The Court has also considered the parties' indexes of evidence (Filing Nos. 53, 62 and 63), although Ogugua's evidence was not timely filed. Its is noted that Ogugua has submitted copies of several letters of support from SVdP parishioners.

spring of 2006, the two met with Curtiss and the chancellor of the Archdiocese to address the conflicts. Kampschneider expressed his concern that Ogugua did not respect Kampschneider's authority or follow his direction. Also discussed at the meeting were conflicts between Ogugua and parish staff, the organization of Ogugua's homilies, and Ogugua's leave schedule. Conflicts between Ogugua and Kampschneider and between Ogugua and parish staff continued through the year.

In September 2006, Kampschneider met with Curtiss and gave him a memo outlining concerns about Ogugua's performance. The concerns included the manner in which Ogugua performed religious liturgies, services, and teaching assignments; his availability for nightly parish activities, office hours, and other parishioner services; and his relationship with parish staff. In December 2006, Ogugua and Kampschneider met with Curtiss, and Curtiss told Ogugua that he would be transferred to the position of associate pastor of another Omaha parish due to his continuing conflicts with Kampschneider, SVdP parish staff, and SVdP school staff.

In late February 2007, Ogugua requested a leave of absence from the Archdiocese so he could serve another diocese. On March 3, 2007, Curtiss granted the request, approving Ogugua's absence through February 28, 2008, noting that the Archdiocese would provide health insurance but not salary for Ogugua during his absence. The day after Ogugua was granted the leave of absence, he sent a letter to SVdP parishioners, describing the circumstances of his transfer from SVdP. Later in March 2007, Ogugua sent a letter to the priests of the Archdiocese, outlining his grievances about his transfer from SVdP. In April 2007, the chancellor of the Archdiocese sent Ogugua a letter warning him to stop sending such mass mailings to SVdP parishioners and Archdiocese priests. In June

2007, the chancellor sent Ogugua an e-mail asking him why he had not picked up the certified letter that was sent to his New York mailing address. Ogugua contends that he did not receive the e-mail, but acknowledges speaking with the chancellor by telephone about the letter.

On August 18, 2007, Ogugua filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the Archdiocese, alleging that he was discharged on March 2, 2007, because of his national origin (African) and in retaliation for complaining about harassment by a pastor. In September 2007, Curtiss sent Ogugua a letter withdrawing permission for him to be absent from the Archdiocese, and ordering him to meet with Curtiss before October 22, 2007. Ogugua denies receiving the letter, but acknowledges that it was correctly addressed to him in New York. Ogugua did not appear for any meeting with Curtiss. Ogugua received a right-to-sue letter from the EEOC and filed this action on December 10, 2007, suing the Archdiocese, Curtiss and Kampschneider.

By letter dated January 7, 2008, Curitss suspended Ogugua from exercising priestly functions because Curtiss concluded that Ogugua had disobeyed canonical warnings and precepts. Curtiss stated that he would consider lifting the suspension if Ogugua would appear before Curtiss no later than March 1, 2008. In February 2008, Ogugua wrote to Curtiss, acknowledging receipt of the letter, but stating that he could not travel to Omaha unless Curtiss provided him with an airline ticket. In March 2008, the chancellor wrote to Ogugua, informing him that the suspension remained in place and that Ogugua would have to bear the cost of any travel to Omaha. Ogugua did not respond to the letter.

In his Second Amended Complaint, filed on June 29, 2008, Ogugua brought claims against the Archdiocese and SVdP based on sexual harassment, race and national origin discrimination, and retaliation; and against Curtiss and Kampschneider based on defamation.

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law.  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In response to the proponent's showing, the opponent's burden is to "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim.*"  Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000). "[T]his Court . . . has noted that 'there is no "discrimination case exception" to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging

discrimination, merits a trial.'" *Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)(quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999)).

The existence of an alleged factual dispute is not sufficient, by itself, to deny summary judgment. Instead, the alleged factual dispute must be outcome determinative. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006).

## DISCUSSION

### *Were Ogugua's Title VII claims untimely?*

A person claiming to be aggrieved under Title VII must file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). The Defendants argue that Ogugua's charge of discrimination filed with the EEOC was untimely, because he named the Archdiocese rather than his actual employer, SVdP. (*See* Charge of Discrimination, Filing No. 53-4).

"[T]he doctrine of separate corporate existence does not break down merely because a corporation is a subsidiary, even if wholly owned by the parent." *Global Credit Servs., Inc. v. Amisub (Saint Joseph Hosp.), Inc.*, 508 N.W.2d 836, 842 (Neb. 1993). For a plaintiff to pierce the corporate veil of a subsidiary corporation, the plaintiff must show that the parent corporation "totally dominated" the subsidiary to such extent that the subsidiary "had no separate corporate existence and functioned solely to achieve the purposes of the dominant corporation." *Id.* at 843.

It is undisputed that Curtiss had the authority to assign priests to SVdP and to remove priests from that parish, and that Curtiss expected such priests to obey his directives and the policies of the Archdiocese. At a minimum, there are genuine issues of material fact as to whether the Archdiocese "totally dominated" SVdP to such an extent that

SVdP had no separate corporate existence and functioned solely to achieve the purposes of the dominant entity.  Summary judgment will not be granted to the Defendants on the basis that Ogugua named the Archdiocese and not SVdP in his EEOC charge.  <u>Does this Court have subject matter jurisdiction over Ogugua's Title VII claims?</u>

The Defendants contend that this Court lacks subject matter jurisdiction to entertain Ogugua's Title VII claims because personnel decisions affecting clergy cannot be reviewed by civil courts without violating the Free Exercise Clause of the First Amendment to the United States Constitution.

In *Scharon v. St. Luke's Episcopal Presbyterian Hosps.,* 929 F.2d 360, 363 (8th Cir. 1991), the plaintiff, an ordained Episcopal priest, was fired after the defendant alleged that she violated several canonical laws.  She sued her former employer under Title VII and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 630 *et seq*. (1988). The Eighth Circuit Court said:

> Personnel decisions by church-affiliated institutions affecting clergy are *per se* religious matters and cannot be reviewed by civil courts, for to review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made.  This is precisely the kind of judicial second-guessing of decision-making by religious organizations that the Free Exercise Clause forbids.

*Id*.

The Eighth Circuit Court also said:

> We are mindful of the potential for abuse our holding theoretically may invite; namely, the use of the First Amendment as a pretextual shield to protect otherwise prohibited employment decisions.  But we think that saving grace lies in the recognition that courts consistently have subjected the personnel decisions of various religious organizations to statutory scrutiny where the duties of the employees were not of a religious nature. [Citations omitted]. We have confidence that courts will continue to consider these situations on a case-by-case basis, looking in each case to see whether the plaintiff's

employment discrimination claim can be adjudicated without entangling the court in matters of religion.

*Id.* at n.3.

The Defendants contend that the case-by-case approach suggested by the Eighth Circuit Court in *Scharon* applies only to "non-clergy employees," and that clergy are precluded from bringing employment discrimination claims. (Defendants' Reply Brief, Filing No. 61, p. 4, n.1). The Defendants cite *Weissman v. Congregation Shaare Emeth*, 38 F.3d 1038 (8th Cir. 1994), in which the Eighth Circuit Court said: "We agree with the Second and Third Circuits' understanding of *Scharon* . . . as a case which stands for the proposition that 'a spiritual employee who also perform[s] spiritual duties' cannot seek relief under the ADEA for adverse employment action by her religious employer." *Weissman*, 38 F.3d at 1044, n. 6.

This Court recognizes that religious employers, such as the Archdiocese and SVdP, are free to discriminate on the basis of race, color, religion, sex[5], national origin, age, physical disability[6], and any other basis, with respect to the terms and conditions of employment of spiritual employees performing spiritual duties. A court cannot interfere in such decisions without becoming entangled in matters of religion in violation of the First Amendment's Establishment Clause.

---

[5] For example, I Timothy 3:2 and Titus 1:6 of the Bible's New Testament appear to require that a spiritual leader in a Christian church be a "husband of one wife." That term has been interpreted by various denominations to require that spiritual leaders be (1) male, (2) not polygamous or polyandrous, (3) not divorced, (4) not married, except metaphorically to the church itself, or (5) simply devoted to the service of the church. No secular court is competent to make any such determinations regarding the qualifications of clergy.

[6] See, *e.g.*, Deuteronomy 23:1.

Liberally construing Ogugua's allegations, this Court initially declined to dismiss his action for failing to state a claim on which relief could be granted, absent any evidentiary record. (Memorandum and Order on Defendants' Motion to Dismiss, Filing No. 21). The evidence before the Court on the pending Motion for Summary Judgment demonstrates that the Archdiocese and SVdP are religious institutions and Ogugua was a clergyman assigned by the Archdiocese to work at SVdP, where his duties were of a religious and spiritual nature. Those facts are undisputed, and the Court's inquiry ends there. This Court cannot review the Defendants' decisions to transfer Ogugua from SVdP, to grant and then retract his leave of absence, and to suspend his authority to exercise priestly functions, without giving rise to excessive government entanglement with religion in violation of the Establishment Clause of the First Amendment. Ogugua's claims of sexual harassment,[7] race and national origin discrimination, and retaliation, are factually entwined and all relate to the adverse personnel actions which form the basis for Ogugua's claims for damages and other relief. His First, Second, and Third Claims for Relief, based on allegations of sexual harassment, race and national origin discrimination, and retaliation, all in violation of Title VII, must be dismissed.

*Should this Court exercise supplemental jurisdiction over Ogugua's defamation claim against his religious supervisors?*

As with Ogugua's Title VII claims, his defamation claim gives rise to First Amendment concerns. This Court need not address those concerns, nor the merits of

---

[7] Ogugua's claim of "sexual harassment" is best described as a complaint of a lack of privacy in the SVdP rectory. The facts supporting his claim are (1) on three occasions Kampschneider came into the bathroom while Ogugua was showering behind a closed shower curtain, and (2) Kampschneider opened Ogugua's bedroom door late at night. (Ogugua Depo., 58:22-64:12, 100:7-101:25, Defendants' Brief, Filing No. 54, ¶ 50; Plaintiff's Brief, Filing No. 60, ¶ 50).

10

Ogugua's defamation claim, however, because that claim was brought pursuant to the Court's supplemental jurisdiction. (Second Amended Complaint, Filing No. 46, ¶ 2; 28 U.S.C. § 1367 (a)). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367 (c).

Having dismissed all claims over which the Court had original jurisdiction, the Court declines to exercise supplemental jurisdiction over Ogugua's Fourth Claim for Relief, based on defamation, libel and slander.

Accordingly,

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 52) is granted;

2. The Defendants' Motion to Present Oral Argument (Filing No. 55) is denied as moot;

3. The Plaintiff Ernest Ogugua's claims against the Defendant Archdiocese of Omaha and the Defendant Saint Vincent de Paul, an Omaha Catholic parish church, are dismissed, with prejudice;

4. The Plaintiff Ernest Ogugua's claims against Defendants Elden F. Curtiss and Daniel Kampschneider are dismissed, without prejudice; and

5. A separate Judgment will be entered.

DATED this 22nd day of October, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge